IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KIM LASHAWN MILLER,
 Plaintiff,

vs.            Case No.: 3:07cv18/MCR/MD

FED EX CORPORATE OFFICE,
 Defendant.
_____

### REPORT AND RECOMMENDATION

    This case filed pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Americans with Disabilities Act of 1990 ("ADA")[2] is now before the court upon defendant's motion for summary judgment filed on April 29, 2008.  (Doc. 43). Defendant also filed a statement of undisputed material facts.  (Doc. 44).  On May 2, 2008 the court entered an order informing the parties that the motion for summary judgment would be taken under advisement on June 2, 2008.  (Doc. 45).  The order further advised the parties of the importance and ramifications of Rule 56 summary judgment consideration, and directed the parties to file and serve affidavits and any other documents or materials authorized to be filed under Federal Rule of Civil Procedure 56 and Northern District of Florida Local Rule 56.1(A) prior to the advisement date.  (*Id.*).  In response, plaintiff filed a document entitled "Motion Not to Grant Summary Judgment."  (Doc. 46).  Upon review of the submissions of the parties, it is the opinion of the undersigned that defendant's motion for summary

---

[1] 42 U.S.C. §§ 2000e to 2000e-17.

[2] 42 U.S.C. §§ 12112-12117.

**judgment should be granted.**

## BACKGROUND

**Plaintiff, an employee of Federal Express Corporation, has filed a complaint pursuant to Title VII and the ADA claiming discrimination on the basis of race (African American) and disability (Post-Traumatic Stress Disorder/Depression) occurring on or about October 10, 2005 at the Pensacola station. (Doc. 1, p. 3). Plaintiff states she was traumatized when she saw a decomposed body while working. She claims defendant Federal Express Corporation (hereinafter "FedEx") treated her unequally when it did not assign her duties under its Temporary Return to Work ("TRW") program, and that FedEx failed to accommodate her alleged disability when it denied her request to return to work. (*Id.*, pp. 4-7).**

**FedEx has submitted a statement of the material facts as to which it contends there is no genuine issue to be tried. (Doc. 44). In addition, FedEx has submitted affidavits, portions of plaintiff's deposition, and other summary judgment materials which it contends show that plaintiff cannot establish a *prima facie* case of race or disability discrimination. (*Id.*, Exs. A-D). It further argues that plaintiff cannot show that FedEx's legitimate reasons for its decisions were a pretext for discrimination.**

**In response, plaintiff has presented additional argument, but no Rule 56 materials or statement of disputed material facts. (Doc. 46).**

## LEGAL ANALYSIS

<u>Summary Judgment Standard</u>

**In order to prevail on its motion for summary judgment, the defendant must show that plaintiff has no evidence to support her case or present affirmative evidence that plaintiff will be unable to prove her case at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If the defendant successfully negates an essential element of plaintiff's case, the burden shifts to plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute**

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting FED.R.CIV.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997)("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). Nonetheless, the non-moving party still bears the burden of coming forward with sufficient evidence of every element that she must prove. *Celotex Corp.*, 477 U.S. 317 (1986). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

**Legal Standard for Race Discrimination Claims**

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect that person's status as an employee, because of that person's race. *See* 42 U.S.C. § 2000e-2(a). To sustain a claim for discrimination under Title VII, the plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of discriminatory animus. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2746-47, 125 L.Ed.2d 407 (1993).

"Direct evidence . . . is evidence that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Schoenfeld v. Babbit*, 168 F.3d 1257, 1266 (11th Cir. 1999); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (stating that evidence which only suggests discrimination or is subject to more than one interpretation is not direct evidence.). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate." *See Schoenfeld*, 168 F.3d at 1266.

In the absence of direct evidence of discrimination, the plaintiff may present circumstantial evidence and invoke the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07, 113 S.Ct. at 2746-47. Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination, which requires: (1) that she is a member of a protected class, (2) that she was qualified for the position she held, (3) that she was discharged or subjected to an adverse employment action, and (4) that the employer treated similarly situated employees outside the protected class more favorably. *See St. Mary's*, 509 U.S., at 506, 113 S.Ct., at 2746-47; *Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).

If a plaintiff establishes this *prima facie* case, a presumption of discrimination is created, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *Id.*, 509 U.S., at 506-07, 113

S.Ct., at 2746-47. "'[T]he defendant must clearly set forth, through the introduction of admissible evidence,'" reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.  *Id.*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55, and n. 8, 101 S.Ct. 1089, 1094-95, and n. 8, 67 L.Ed.2d 207 (1981)).[3]

If the defendant satisfies this burden, the presumption disappears and plaintiff must prove that the proffered reasons were not the true reasons for the employment decision.  *St. Mary's*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48.  *See also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).  A plaintiff can avoid summary judgment if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and (2) creates a reasonable inference that race was a determinative factor in the actions of which plaintiff complains.  *See Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 370 (5th Cir. 1997).

Despite the burden-shifting framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine,* 450 U.S., at 253, 101 S.Ct., at 1093.  She must establish a *prima facie* case and rebut any legitimate non-discriminatory explanation proffered by the employer.  *St. Mary's*, 509 U.S., at 507, 113 S.Ct., at 2747.

**Legal Standard for Disability Discrimination Claims**

The ADA "prohibits covered employers from discriminating based upon the known physical or mental impairments of a qualified individual with a disability." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997); 42 U.S.C. § 12112.  To establish a prima facie case of discrimination under the ADA, plaintiff must show that she:  (1) has a disability, (2) is a qualified individual,

---

[3]The burden on defendant to proffer a non-discriminatory reason for its action is a burden of production, and is satisfied regardless of the persuasive effect of the proffered reason. *See St. Mary's*, 509 U.S., at 506-07, 113 S.Ct. 2742.

and (3) was unlawfully subjected to discrimination because of her disability. *Id.*

An individual has a "disabiltiy" within the ADA's purview when she has "a physical or mental impairment that substantially limtis one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1). When an individual claims that she is substantially limited in the major life activity of "working," her condition must "significantly restrict [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training skills and abilities." *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1133 (11th Cir. 1996) (internal quotations and citations omitted). It is well established that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Rossbach v. City of Miami*, 371 F.3d 1354, 1359 (11th Cir. 2004).

**Undisputed Material Facts**

The following facts are set forth in FedEx's statement of undisputed material facts. The statement was submitted with FedEx's motion for summary judgment as required by Local Rule 56.1(A).[4] These facts are deemed admitted because plaintiff has not submitted her own statement controverting said facts. *Id.*; *see also Reese v. Herbert,* — F.3d —, 2008 WL 2066521, at *9 (11th Cir. May 16, 2008) (upholding validity of identical local rule, and holding that proper course for district court in applying that rule is to disregard evidence relied on by the non-moving party that yields facts contrary to those listed in the movant's statement). Also included in these facts are those factual allegations of plaintiff's verified complaint that comply with the requirements for affidavits set forth in Rule 56 and that are not contrary to those listed in FedEx's statement.

---

[4] Rule 56.1 provides: "Any motion for summary judgment filed pursuant to Fed.R.Civ.P. 56 . . . shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." N.D. Fla. Loc. R. 56.1(A). The rule further requires: "The party opposing a motion for summary judgment shall, in addition to other papers or matters permitted by the rules, file and serve a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be filed and served by the opposing party." *Id.*

**Plaintiff is a current employee of FedEx. From 1996 until 2005, plaintiff worked for FedEx in Memphis, Tennessee. She held a variety of office jobs in which she was responsible for handling customs paperwork for international shipments and performing similar office duties. In the spring of 2005, plaintiff bid on a posting for an open position as a courier at FedEx's station located in Pensacola, Florida. Plaintiff was hired for the courier position in Pensacola and has worked for FedEx's Pensacola station since May of 2005. (Doc. 44, Ex. A, Miller Dep., pp. 39-41, 48-49, 176).[5]**

**A FedEx courier drives a FedEx vehicle to pick up and deliver packages to FedEx customers. Plaintiff admits that one of the essential duties of the courier position is driving a commercial vehicle to perform the pick up and delivery of packages. (Ex. A, Miller Dep., pp. 49-51 and ex. 6).**

**In August of 2005, plaintiff attempted to deliver a package to a residence, but the resident did not answer the door. When plaintiff attempted to deliver the package on the following day, a neighbor indicated that the resident had not been seen for several days, and plaintiff stood at the door while the neighbor went inside to look for the resident. While standing at the door, plaintiff saw the resident's deceased body lying on the floor. (Ex. A, Miller Dep., pp. 98-100). Plaintiff called in sick and did not work the following day, but then she returned to her normal delivery route the next week. (*Id.*, pp. 102-103).**

**Plaintiff was troubled by the memory of seeing the deceased body, so she sought counseling and started meeting with a counselor once a week. (*Id.*, pp. 103-05). On or about October 7, 2005, plaintiff filled out a questionnaire for her counselor, and the counselor sent plaintiff to the hospital to get some medication to help her relax. Once plaintiff got to the hospital, the hospital reviewed plaintiff's answers on the questionnaire, which indicated that plaintiff was experiencing suicidal thoughts. The hospital involuntarily committed plaintiff to Baptist Lakeview**

---

[5]Hereafter, all references to exhibits will be to those attached to Doc. 44, unless otherwise noted.

psychiatric hospital for three days. (*Id.*, pp. 105-12; *see also* Doc. 1, p. 4). Plaintiff was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). (Doc. 1, p. 4).

Once plaintiff was released from the hospital, she provided FedEx with a medical excuse stating that she would need to be off from work for another week, until October 17, 2005. (Doc. 44, Ex. A, Miller Dep., p. 113). Plaintiff's manager gave plaintiff an FMLA certification form, and informed plaintiff that she would need to have her physician complete the form. (*Id.*, pp. 115-16). However, plaintiff had previously scheduled a vacation for the week following her anticipated return date, so plaintiff did not immediately return the form to her manager. (*Id.*, pp. 113, 115-16, 118-19, 121-22).

Lisa Nunez is FedEx's Human Capital Management Program manager. In that capacity, she supervises and evaluates the cases of all employees in FedEx's River District who are on a medical leave of absence. (Doc. 44, Ex. B, Nunez Decl. ¶ 2). Once Ms. Nunez became aware that plaintiff was out of work due to medical reasons, she sent plaintiff a memorandum (on October 12, 2005) explaining FedEx's Medical Leave of Absence Policy. (*Id.*, ¶ 4).[6] Pursuant to that memorandum, plaintiff understood that her courier position at the Pensacola station was protected for a period of 90 days of medical leave. (Doc. 44, Ex. A, Miller Dep., ex. 13; *see also* Ex. B, Nunez Decl. ¶ 3). If plaintiff was out on medical leave for more than 90 days, her courier position could be filled, and plaintiff would be required to seek another open position once she was medically able to return to work. The memorandum also informed plaintiff that if she qualified for Short Term Disability benefits, FedEx's Short Term Disability plan would pay her 70% of her earnings as long as she was unable to perform her job. (*Id.*, pp. 119-20, 150 and ex. 13). In addition to the memorandum, plaintiff was provided an FMLA Eligibility and Notice Form informing her that she was eligible for leave under the FMLA, that whether her absence was FMLA would be determined upon timely receipt of the FMLA medical certification,

---

[6]Plaintiff received the memorandum on October 26, 2005, after returining from her vacation. (Ex. A, Miller Dep., pp. 120-21 and ex. 13).

and that in order to return to her position plaintiff would need to have her physician fill out a medical release certifying that she was medically released to return to work. (Ex. A, Miller Dep., p. 122 and ex. 13).

On or about October 12, 2005, Ms. Nunez also sent plaintiff a memorandum requesting that she have her physician fill out a Physical Capacities Evaluation form. The purpose of the form was to identify the nature of plaintiff's medical restrictions so that Ms. Nunez could determine whether plaintiff could be assigned duties under FedEx's TRW program.[7] (Ex. B, Nunez Decl. ¶ 6, *see also* Ex. A, Miller Dep., pp. 133-35). Ms. Nunez never received a completed form back for plaintiff. (Ex. B, Nunez Decl. ¶ 7). Plaintiff admitted in her deposition that her doctor did not complete the Physical Capacities Evaluation; rather, the physician returned the form to FedEx indicating that she could not evaluate plaintiff's physical capabilities, only her mental condition. (Ex. A, Miller Dep., pp. 133-35).

Plaintiff returned from vacation and was evaluated by her physician on October 25, 2005. (*Id.*, pp. 134-35; Doc. 46, p. 3). On that date, plaintiff's physician completed a Behavioral Health Clinician Statement in which she indicated that plaintiff was unable to perform essential duties of her job. The physician recommended that plaintiff stay home from work. (*Id.*, pp. 124-25 and ex. 14).

On November 1, 2005, plaintiff's physician completed FedEx's FMLA medical certification form. (*Id.*, ex. 15). On that form she indicated that plaintiff was unable to drive or go to customers' homes. (*Id.*). Plaintiff admits that driving and delivering to customers' homes were essential duties of her courier position. Based on the

---

[7]FedEx has a program for employees on medical leave that is known as the Temporary Return to Work ("TRW") program. A TRW assignment is not an assignment to a vacant position, but is an assignment to temporary "makeshift" duties for employees who are unable to perform their normal jobs. Not all employees on medical leave are assigned to TRW assignments, as there may be no available "makeshift" work, or the employee may not be medically able to perform the available work. Pursuant to FedEx's TRW policy, the maximum amount of time that an employee can work a TRW assignment is 90 days. (Ex. A, Miller Dep., p. 127; Ex. B, Nunez Decl. ¶ 6).

If an employee qualifies for payments from FedEx's disability policy, a TRW assignment does not have any effect on the employee's income. Instead, any wages earned on a TRW assignment offset benefits that would have been paid by FedEx's disability policy. (*Id.*, pp. 130-131; Ex. B, Nunez Decl. ¶ 9).

physician's certification, plaintiff remained on medical leave. (*Id.*, pp. 123-24, 128-29 and ex. 15). The FMLA medical certification form did not address whether plaintiff was capable of performing other duties such as typical TRW duties. (Ex. A, Miller Dep. at ex. 15; Ex. B, Nunez Decl. ¶ 8).

In November of 2005, plaintiff returned to the Pensacola station to submit some paperwork and noticed that two white co-workers had been placed on new TRW assignments. (Doc. 1, pp. 4-5; Doc. 44, Ex. A, Miller Dep. p. 129). Plaintiff has no personal knowledge of what was reported to FedEx by these co-workers' physicians. (Ex. A, Miller Dep., p. 130). Plaintiff admits that Ms. Nunez never said anything that would indicate she is biased against African American employees. (*Id.*, pp. 125-26).

Ms. Nunez assigned employees of various races, including both African American employees and Caucasian employees, to TRW assignments during the time that plaintiff was on medical leave. (Ex. B, Nunez Decl. ¶ 12). Likewise, Nunez declined to assign employees of various races, including both African American employees and Caucasian employees, to TRW assignments during the time that plaintiff was on medical leave. The employee's race had nothing to do with whether the employee was placed on a TRW assignment. Instead, whether an employee was assigned to TRW depended upon such factors as whether there was any available work, whether Nunez had received an evaluation form from the employee's physician approving the employee for the available work, and whether the employee's position had been replaced at the location. (*Id.*, ¶ 12). During the early part of plaintiff's medical leave, there were two other employees at the Pensacola station who were on medical leave. (*Id.*, ¶ 11). These employees were on leave for physical injuries, and not work-related stress or anxiety. In addition, Ms. Nunez received documentation from these employees' respective physicians providing assurance that a TRW assignment would not exacerbate their conditions. Accordingly, Ms. Nunez assigned these other employees to TRW duties. As a result of these assignments, there was no need for additional TRW work at the Pensacola station.

Ms. Nunez did not attempt to assign plaintiff to a TRW assignment during the first 90 days of plaintiff's medical leave due to several factors, including lack of sufficient available work; a concern that a TRW assignment, which would likely involve dealing with FedEx customers, could exacerbate plaintiff's work-related stress and anxiety; and the absence of documentation from plaintiff's physician providing assurance that a TRW assignment was safe for plaintiff. (Ex. B, Nunez Decl. ¶¶ 10, 11).

Plaintiff applied for and received benefits under FedEx's Short Term Disability policy. (*Id.*, pp. 30-31; Ex. B, Nunez Decl. ¶ 9). The disability benefits started in late November of 2005 and continued through December of 2007. (Ex. A, Miller Dep., p. 31). On or about December 6, 2005, plaintiff's physician informed FedEx's third party disability administrator that plaintiff was still unable to make deliveries to residences or businesses. (Ex. A, Miller Dep., p. 140). The physician conveyed similar information to the disability administrator in January of 2006, (Ex. A, Miller Dep. at ex. 29), and in March of 2006. (Ex. A, Miller Dep., ex. 26).

On December 14, 2005, plaintiff chose to remove herself from her medication and wrote her physician informing her of that choice. (Doc. 1, p. 5). Also in December of 2005, plaintiff contacted Ms. Nunez and reported that she had been released by her physician to return to full duty. (Doc. 44, Ex. B, Nunez Decl. ¶ 13). Because the courier position involves driving a commercial vehicle, the position is regulated by the Department of Transportation ("DOT"), and couriers are required to meet medical requirements imposed by DOT regulations.[8] (Ex. A, Miller Dep., pp. 51-52 and ex. 6; Ex. B, Nunez Decl. ¶ 14). Therefore, Ms. Nunez asked plaintiff to obtain a DOT physical, and Nunez sent the physical results to a third-party Medical Review Officer ("MRO") for review. (Ex. A, Miller Dep., pp.126, 136-38; Ex. B, Nunez

---

[8]The DOT has promulgated the Federal Motor Carrier Safety Regulations, which establish minimum qualifications for persons who drive commercial motor vehicles and minimum duties of motor carriers with respect to the qualifications of their drivers. 49 C.F.R. § 391.1. Under the regulations, a physician must certify that the driver does not have any physical, mental, or organic defect of such a nature as to affect the driver's ability to operate safely a commercial motor vehicle. *Id.* at § 391.43.

Decl. ¶ 14). The MRO informed Ms. Nunez that plaintiff was not cleared to return to her courier position. (Ex. A, Miller Dep., p. 147; Ex. B, Nunez Decl. ¶ 14). Plaintiff never appealed that determination to the DOT.[9] (Ex. D, Answer to Admis. 2).

Plaintiff admits that her physician reported that plaintiff was unable to drive a FedEx vehicle or make deliveries to customers' homes from the time plaintiff's medical leave began in October of 2005 until the latter part of 2007. (Ex. A, Miller Dep., pp. 171-72, 175-76 and ex. 26).

On January 13, 2006, FedEx informed plaintiff that her medical leave had exceeded 90 days, so the company would fill her courier position at the Pensacola station. This policy of replacing an employee's position after 90 days of medical leave has been followed with both white and black employees. (*Id.*, p. 150 and ex. 23; *see also* Ex. B, Nunez Decl., ¶¶ 4, 16, 17, 20).[10] After January 13, 2006, Ms. Nunez no longer considered plaintiff for a TRW assignment because she does not typically assign an employee to TRW once the employee's permanent position has been replaced. (Ex. B, Nunez Decl. ¶ 17).

In December of 2007, Ms. Nunez received information from FedEx's third party disability policy administrator that plaintiff had been medically cleared to return to work. Once Ms. Nunez received that information, she offered plaintiff her choice of the positions that were open and available throughout the district. Plaintiff was not interested in any of the positions, so Ms. Nunez sent plaintiff postings of job openings until plaintiff chose to bid on an open position as a Courier in Pensacola. Plaintiff currently occupies that position and is working as a Courier in Pensacola. (Ex. A, Miller Dep., pp. 176-77, 183 and exs. 31 and 33; Ex. B, Nunez Decl. ¶ 19).

While plaintiff was on medical leave from FedEx, plaintiff was able to see, hear, walk, talk, run, lift and care for herself like a normal person. Plaintiff was able

---

[9]The DOT regulations provide appeal procedures for situations in which a driver is determined by a MRO to be unqualified under DOT qualification standards. *Id*. at § 391.49.

[10]Plaintiff alleges that another manager at the Pensacola station made a statements that plaintiff interpreted as racially biased, but plaintiff did not report to that manager and those statements were unrelated to any decisions made the basis of this case. (Ex. A, pp. 55-62).

to drive her personal vehicle. Her only restriction was on her ability to drive a commercial vehicle and make deliveries to FedEx's customers. (Ex. A, Miller Dep., pp. 131-132). While plaintiff was on medical leave, she worked as a call center representative for AT&T. (*Id.*, p. 15). She worked 40 hours a week during the time that she was employed as a call center representative. (*Id.*, p. 18). In addition, plaintiff worked as a volunteer counselor for abused women, and volunteered as a chaperone for church youth sleepovers. Plaintiff also acted as an instructor at a youth camp during the spring and summer of 2006, working full days. (*Id.*, pp. 21-23). Plaintiff drove herself to all of these activities in her personal vehicle. (*Id.*, p. 23). Plaintiff was enrolled in online college courses while she was on medical leave, and she anticipates earning a bachelor's degree through her online studies by the fall of 2008. (*Id.*, pp. 13-14).

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations in which she alleged that he was denied a temporary job reassignment because of her race and disability. (Doc. 1, p. 11). After the EEOC issued a "Dismissal and Notice of Rights", plaintiff timely filed a complaint in this court on January 11, 2007.

**Whether FedEx Is Entitled To Summary Judgment**

Plaintiff claims Ms. Nunez discriminated against her on the basis of race and disability when she did not give plaintiff an assignment under FedEx's TRW program while plaintiff was out on medical leave, but gave two white co-workers such assignments. (Doc. 1, p. 4). Plaintiff also complains that Ms. Nunez required her to take a DOT physical before considering plaintiff for a temporary work assignment or allowing plaintiff to return to full duty.

With regard to plaintiff's race discrimination claim, FedEx does not dispute that plaintiff is a member of a protected class. It argues, however, that plaintiff cannot establish any of the other elements of a *prima facie* case. FedEx further argues that even if plaintiff is able to establish the elements of a *prima facie* case, she fails to establish that FedEx's proffered reasons for its actions were mere pretext and that the conduct was based on plaintiff's race. (Doc. 43, pp. 9-16). With

regard to plaintiff's disability discrimination claim, FedEx argues that plaintiff cannot establish a *prima facie* case of disability discrimination, and even if she could, she cannot establish pretext. (*Id.*, pp. 16-21). Finally, FedEx asserts that all of plaintiff's discrimination claims are barred by her failure to disclose this suit as an asset in her bankruptcy proceedings. (*Id.*, pp. 21-22).[11]

    i.    **Race Discrimination Claim**

The court will first address plaintiff's race discrimination claim. Plaintiff fails to present direct evidence of disparate treatment on the basis of race. Plaintiff admits that she has no personal knowledge of racially discriminatory language being used by Ms. Nunez, the manager who was involved in the decisions made the basis of this case. Thus, in order to proceed past the summary judgment phase, plaintiff must establish a *McDonnell Douglas prima facie* case through circumstantial evidence. For the reasons that follow, the undersigned finds that plaintiff has not done so.

First, plaintiff cannot establish the adverse-employment-action element. Although evidence of "direct economic consequences" is not always required, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001). The asserted impact "cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* "The employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

"Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Id.* at 1245.

---

[11]Because the undersigned recommends granting summary judgment on plaintiff's discrimination claims, neither the undisputed facts nor an analysis concerning plaintiff's alleged non-disclosure is necessary.

**Accordingly, courts have held that a mere assignment of duties which has no economic impact on a plaintiff does not rise to the level of an adverse employment action.** *Id.* **at 1240 (holding that declining to designate plaintiff to temporary work assignment, which had no economic impact and involved no increase in benefits or unique opportunities for advancement, did not rise to the level of an adverse employment action);** *Grimsley v. Marshalls of MA, Inc.*, **2008 WL 2435581, at \*4 (11th Cir. June 17, 2008) (unpublished opinion) (holding that the temporary assignment of additional tasks, without a change in compensation or position, did not amount to an adverse action);** *Davis v. U.S. Postmaster General*, **190 Fed. Appx. 874, 876 (11th Cir. 2006) (same).**

**In the instant case, plaintiff's primary complaint is that she was not assigned duties under FedEx's TRW program.[12] However, based upon an objective view of the nature and length of such assignments, the decision not to provide a TRW assignment cannot be viewed as an adverse employment action. A TRW assignment is not an assignment to a vacant position, but is an assignment to temporary "makeshift" duties for employees who are unable to perform their normal jobs. Not all employees on medical leave are assigned to TRW assignments, as there may be no available "makeshift" work, or the employee may not be medically able to perform the available work. The maximum amount of time that an employee can work a TRW assignment is 90 days.**

**Furthermore, the lack of TRW assignment had no economic impact on plaintiff. She lost no pay, as any wages earned on a TRW assignment would have merely offset benefits that were being paid to plaintiff by FedEx's disability policy.[13]**

---

[12]Plaintiff refers to this as a "temporary modified assignment" in her complaint. (Doc. 1, pp. 4-5).

[13]Plaintiff concludes her complaint by describing the financial hardship she suffered while on medical leave. She states: "During this time from on or about 10/14/05 until present date 01/03/07, I Plaintiff Kim Miller have lost majority of my income going from about $46,000 a year to about $12,000 in 2006, became homeless with 3 kids, weeks without food and transportation to take kids to school, lost 95% of all our possessions, and yet to beg[i]n recovery from my disability." (Doc. 1, p. 6). However, this describes the impact of plaintiff's PTSD, not the lack of a temporary work assignment. Plaintiff does not dispute that a TRW assignment would have lasted a maximum of 90 days. Nor does she dispute that any income from the assignment would have merely offset the Short Term Disability

**Additionally, plaintiff's lack of assigned duties under the TRW program had no impact on her benefits or title. Plaintiff does not allege that the lack of a temporary assignment resulted in any loss of prestige, responsibility or opportunity for advancement. Because the summary judgment record does not contain a genuine issue of material fact on the question of whether Ms. Nunez's decision not to assign plaintiff temporary duties under the TRW program caused plaintiff any tangible harm, plaintiff cannot show an actionable adverse employment action.**

**Second, the summary judgment record reveals no genuine issue of fact for trial on whether FedEx treated similarly situated employees outside of plaintiff's protected class more favorably. In order to be similarly situated, the comparator "must be nearly identical" to plaintiff "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."** *Silvera v. Orange County School Bd.,* **244 F.3d 1253, 1259 (11th Cir. 2001). In the instant case, plaintiff has not provided evidence that the two white co-workers assigned TRW duties were "nearly identical" comparators. She admits to having no personal knowledge of what these co-workers' physicians reported to Ms. Nunez. The summary judgment evidence establishes that the two white co-workers were on leave for physical injuries, not work-related stress or anxiety. The summary judgment evidence further establishes that Ms. Nunez received documentation from these employees' physicians providing assurance that a TRW assignment would not exacerbate their conditions. Ms. Nunez did not receive such documentation from plaintiff. Finally, the record evidence demonstrates that Ms. Nunez declined to assign employees of various races, including both black and white employees, to TRW duties during the time plaintiff was on medical leave. In the absence of evidence establishing that similarly situated white employees were treated more favorably, plaintiff cannot establish a** *prima facie* **case of race discrimination.**

**With regard to plaintiff's complaint that Ms. Nunez required her to submit to a DOT physical before returning to full duty, the record evidence establishes that**

---

benefits she was receiving. Thus, this statement does not raise a genuine issue of fact for trial concerning whether the lack of a TRW assignment had an adverse economic impact on plaintiff.

*Case No: 3:07cv18/MCR/MD*

because the courier position involves driving a commercial vehicle, the position is regulated by the DOT, and all couriers are required to meet medical requirements imposed by DOT regulations.  Therefore, Ms. Nunez asked plaintiff to obtain a DOT physical prior to returning to full duty.  The physical results were sent to a third-party MRO, who informed Ms. Nunez that plaintiff was not cleared to return to her courier position.  Plaintiff never appealed that determination to the DOT.  Based on the MRO's determination, plaintiff's request to return to full duty was denied.  It was not until December of 2007 that Ms. Nunez was informed that plaintiff had been medically cleared to return to full duty as a courier.  Plaintiff was asked to take another DOT physical and, after being cleared by the MRO, was offered the choice of FedEx positions that were open and available throughout the district.  Ms. Nunez treated plaintiff's request to return to work consistently with her treatment of other employees of various races, including both black and white employees.  This undisputed evidence establishes that <u>all</u> employees seeking to return to work as couriers were required to meet DOT requirements, obtain a DOT physical, and be cleared by a third-party MRO prior to returning to full duty.  Therefore, because the record does not contain a genuine issue of material fact on the question of whether FedEx treated similarly situated employees outside the protected class more favorably than plaintiff, plaintiff cannot establish a *prima facie* case of race discrimination on this aspect of her complaint.

   Even assuming, without deciding, that plaintiff established a *prima facie* case, FedEx has stated legitimate, non-discriminatory reasons for its actions.  FedEx has offered evidence that several factors played a role in the decision not to assign plaintiff to TRW duties, including lack of sufficient available work, a concern that a TRW assignment could exacerbate plaintiff's work-related stress and anxiety, and the absence of documentation from plaintiff's physician providing assurance that a TRW assignment was safe for plaintiff.  By not responding to FedEx's statement of undisputed facts, plaintiff has admitted that these were the reasons she was not assigned to TRW duties.

FedEx has also offered evidence that the requirement that plaintiff obtain and pass a DOT physical prior to returning to full duty was based on DOT regulations concerning operation of commercial motor vehicles. By not responding to FedEx's statement of undisputed facts, plaintiff has admitted that this was the reason she was required to pass a DOT physical before returning to full duty.

Even in the absence of such admissions, plaintiff has failed to present evidence raising a genuine issue of fact for trial concerning whether the foregoing reasons were merely a pretext for intentional discrimination and FedEx was actually motivated by racial animus. *Chapman v. A1 Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000). Based on all of the foregoing, summary judgment on plaintiff's racial discrimination claim is appropriate.

ii.   **Disability Discrimination Claim**

Plaintiff claims Ms. Nunez discriminated against her on the basis of her disability when Nunez did not give plaintiff an assignment under FedEx's TRW program. Plaintiff claims she is disabled under the ADA because she suffers from PTSD. While PTSD is a mental impairment, PTSD, in and of itself, does not necessarily meet the statutory definition of an ADA disability. The EEOC's regulations implementing the ADA define "mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2); *see Hamilton v. Southwestern Bell Tel. Co.*, 135 F.3d 1047, 1050 (5th Cir. 1998) ("PTSD . . . standing alone, is not necessarily a disability contemplated by the ADA."); *Johnston v. Henderson*, 144 F.Supp.2d 1341, 1350 (S.D. Fla. 2001), *aff'd sub nom. Johnston v. U.S. Postmaster General*, 277 F.3d 1380 (11th Cir. 2001) (Table) (same); *see also Gazaway v. Makita*, 11 F.Supp.2d 1281 (D. Kan. 1998) (holding that plaintiff suffering from PTSD did not have a disability within the meaning of the ADA).

To be covered under the ADA, plaintiff must demonstrate that her PTSD was such that it substantially limited a major life activity. *See* 29 C.F.R. § 1630.2(g)(1). *Hamilton*, 136 F.3d at 1050; *Johnston*, 144 F.Supp.2d at 1350; *see also Floyd Adams*

*v. Autozoners, Inc.*, 1999 WL 744039, at *3 (E.D. La. 1999) (unpublished decision) ("[P]laintiff's allegation that he suffered from a mental impairment, PTSD, is not enough to assert a disability protected by the ADA. Plaintiff must also show that the impairment limited one of his major life functions."). The term "Major Life Activities" is defined by the EEOC regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In the instant case, plaintiff has not presented any evidence to show that she was unable to perform tasks central to most people's daily lives. To the contrary, plaintiff stated in her deposition that while she was on medical leave from FedEx, she was able to see, hear, walk, talk, run, lift and care for herself like a normal person. She was able to drive her personal vehicle, work another job, perform volunteer work and take college courses. Her only restriction was on her ability to drive a commercial vehicle and make deliveries to FedEx customers; however, this restriction does not qualify as a disability under the ADA. *See Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 200-201, 122 S.Ct. 681, 693, 151 L.Ed.2d 615 (2002) ("[T]he central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job."); *see, e.g., Taylor v. Fed. Express Corp.*, 429 F.3d 461, 465 (4th Cir. 2005) (holding that a physical impairment which precludes someone from performing the job requirements of a FedEx courier, but does not preclude the employee from performing other jobs or other daily activities that are central to most people's lives, is not a disability under the ADA).

Because the record does not contain a genuine issue of material fact on the question of whether plaintiff's PTSD limited any major life function, plaintiff cannot show she had a disability protected by the ADA, and summary judgment on her ADA claim is appropriate.[14]

---

[14] Because the court finds that plaintiff has not shown that her PTSD constitutes a disability under the ADA, the court need not consider the other elements of the *prima facie* case. *See, e.g., EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006).

**Accordingly it is respectfully RECOMMENDED:**

1. That defendant's motion for summary judgment (doc. 43) be GRANTED.

2. That the clerk be instructed to enter judgment in favor of the defendant and close this file.

At Pensacola, Florida this 27th day of June, 2008.


/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11**[th] **Cir. 1988).**